IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | | |
|---|---|---|
| DEIEL REESE, | ) | |
| | ) | |
| Plaintiff, | ) | Case No. 20-cv-7488 |
| | ) | |
| v. | ) | Judge Robert M. Dow, Jr. |
| | ) | |
| COOK COUNTY SHERIFF THOMAS DART, et al., | ) ) ) | |
| | ) | |
| Defendants. | ) | |

**MEMORANDUM OPINION AND ORDER**

Plaintiff Deiel Reese brings this action pursuant to 42 U.S.C. § 1983 against several medical professionals, prison officials, Cermak Health Services Facility, and Cook County. Before the Court is a motion to dismiss [47] filed by Defendants Dart and Yoksoulian. For the reasons set forth below, the Court grants in part and denies in part Defendants' motion.

**I.     Background[1]**

Plaintiff Deiel Reese is incarcerated at the Illinois Department of Corrections Sheridan Correctional Facility in Sheridan, Illinois. [11 at ¶ 9.] Defendant Thomas Dart is the Sheriff of Cook County and is responsible for all policies and practices of the Cook County Department of Corrections. [*Id.* at ¶ 10.] Defendant Cook County is a municipal corporation incorporated under the laws of the State of Illinois. [*Id.* at ¶ 11.] Cook County runs the Cermak Health Services Facility ("Cermak Hospital"), which is affiliated with the Cook County Bureau of Health Services and provides health services for detainees at Cook County Jail, including Plaintiff. [*Id.* at ¶ 12.] Cermak Hospital promulgated rules, regulations, policies, and procedures for the medical

---

[1] For purposes of Defendants' motion to dismiss, the Court accepts as true all well-pled allegations set forth in the amended complaint [11] and draws all reasonable inference in Plaintiff's favor. *Calderon-Ramirez v. McCament*, 877 F.3d 272, 275 (7th Cir. 2017).

screening, treatment, and overall care of inmates at the Cook County Jail. [*Id.* at ¶ 12.] Cermak Hospital policies were implemented by its employees and Cook County employees, including those responsible for medical care for inmates at the jail. [*Id.*] Plaintiff also names several individual medical care providers as defendants: Dr. Wakas Ahmad, Nurse Jonathan Taylor, Nurse Glen Trammel, Nurse Gary Sheehan, Nurse Kingston Olikugu, Nurse Jane Doe, Nurse Jill Doe, and Nurse Donald MacLellan. [*Id.* at ¶ 13.] Lastly, Defendant Superintendent Yoksoulian is employed by the Cook County Sheriff's Department as a supervising correctional officer in the Cook County Jail. [*Id.* at ¶ 14.]

Plaintiff was housed at the Cook County Jail in April 2020. [11 at ¶ 17.] In light of the COVID-19 crisis, the Cook County Jail began to conduct COVID-19 tests on inmates in its facilities. [*Id.* at ¶ 18.] On April 17, 2020, Plaintiff was transported from the Cook County Jail to Cermak Hospital for a vitals check and a diagnostic COVID-19 test. [*Id.* at ¶ 19.] Plaintiff had recently taken a diagnostic COVID-19 test, so this would be his second test within a 24-hour period. [*Id.* at ¶ 20.]

Plaintiff was taken into a room at the Cermak Hospital by three unknown Cook County personnel (whom Plaintiff believes were correctional officers at the Cook County Jail) and was met there by Nurse Taylor, an employee of Cermak Hospital. [11 at ¶ 21.] Other Cermak Hospital personnel were also in the room with Plaintiff, including Dr. Wakas. [*Id.* at ¶ 22.] Nurse Taylor informed Plaintiff that he would be administering another COVID-19 test. [*Id.* at ¶ 23.] Plaintiff informed Nurse Taylor and the three unknown correctional officers that he would not take another COVID-19 test because he had taken a test with a negative result very recently. [*Id.* at ¶ 24.] He asked Nurse Taylor to provide him with a "medical refusal document" for him to fill out and sign to indicate that he would not be taking another COVID-19 diagnostic test. [*Id.* at ¶ 25.] According

to the complaint, Nurse Taylor ignored Plaintiff's refusal and told him that as an inmate, he did not have the right to accept or refuse medical treatment. [*Id.* at ¶ 26.]

Although Plaintiff was already handcuffed, Nurse Taylor, the three unknown correctional officers, and a Division 6 transporting officer attempted to hold Plaintiff down to administer the COVID test. [11 at ¶ 27.] Plaintiff again informed everyone in the room—the correctional officers, Nurse Taylor, and Dr. Wakas—that he was not consenting to the COVID-19 test. [*Id.* at ¶ 28.] According to the complaint, Nurse Taylor ignored Plaintiff's statements and "forcefully jabbed" the testing swab up Plaintiff's right nostril,[2] causing Plaintiff to feel a pop inside his nostril. [*Id.* at ¶¶ 29-30.] Plaintiff claims that he initially thought the sound was caused by the swab breaking, but he quickly began experiencing "excruciating pain," and noticed that his nose was bleeding. [*Id.* at ¶ 30.] None of the medical professionals in the room treated Plaintiff's nose despite his "protests." [*Id.* at ¶ 31.] Eventually, Plaintiff realized that he did not have the ability to breathe out of his right nostril. [*Id.* at ¶ 32.] Plaintiff had another 24 hours remaining in his stay at Cermak Hospital, so in that time he told several medical personnel about the pain he was suffering, including Dr. Wakas, Nurse Taylor, Nurse Trammel, Nurse Sheehan, Nurse Olikugu, and Nurse MacLellan. [*Id.*] None treated his nose any further or scheduled any future treatment to address the pain. [*Id.*]

Once discharged from Cermak Hospital, Plaintiff returned to the Cook County Jail where he was housed in Division 10-I-D-4, a designated COVID recovery ward. [11 at ¶ 33.] On April 30, 2020, at 10 a.m., Superintendent Yoksoulian entered the COVID recovery ward and ordered three unknown correctional officers to mace an inmate to subdue him. [*Id.* at ¶¶ 34-35.] The toxic

---

[2] The complaint states in one paragraph that the swab was placed into Plaintiff's left nostril [1 at ¶ 29], but throughout the rest of the complaint refers to the incident as having occurred in his right nostril [see *id.* at ¶¶ 30, 32, 53]. The difference is immaterial at the present stage of the case.

fumes from the mace spread throughout the ward and Plaintiff began to choke and experience shortness of breath. [*Id.* at ¶ 37.] Plaintiff immediately requested help from Superintendent Yoksoulian by holding up his inhaler and telling the superintendent that he was asthmatic and was having a severe reaction to the mace that had been sprayed in the ward. [*Id.* at ¶¶ 38-39.] Yoksoulian said to Plaintiff, "Don't worry, you won't die," and took no action to aid him. [*Id.* at ¶ 40.]

Soon after, Plaintiff was removed from his cell to be searched, and by this time his shortness of breath had progressed to a full asthma attack, and he was choking and laboring to breathe. [11 at ¶¶ 41-42.] Plaintiff pleaded for medical attention, but instead was returned to his cell in his state of respiratory distress. [*Id.* at ¶ 43.] Yoksoulian exited the ward without addressing Plaintiff's medical episode. [*Id.* at ¶¶ 44-45.]

Later that day, at approximately 1:30 p.m., two nurses, Jane Doe and Jill Doe, entered the COVID recovery ward. [11 at ¶ 46.] Plaintiff told the nurses that he was having trouble breathing and had an asthma attack because of the mace that was sprayed in the ward earlier in the day. [*Id.* at ¶ 47.] The nurses took Plaintiff's vitals and noticed that his oxygen levels were extremely low. [*Id.* at ¶ 48.] Plaintiff asked the nurses to be taken out of the ward until it was decontaminated of the mace, but they refused and told Plaintiff they were outside contractors and were at the jail only to take vitals. [*Id.* at ¶ 49.]

At approximately 5 p.m., seven hours after the mace had been sprayed in the ward, another nurse entered the ward and checked Plaintiff's vitals. [11 at ¶ 50.] The nurse noticed Plaintiff was barely breathing, was unable to talk and walk, and that his blood oxygen levels were life threateningly low. [*Id.* at ¶ 51.] The nurse ordered to have Plaintiff rushed to an outside hospital. [*Id.*] Plaintiff was rushed to Mt. Sinai where he "did not spend much time," and was eventually

released back to Cermak Hospital where he spent an additional five days. [*Id.* at ¶ 52.]

A few weeks later, on May 20, 2020, Plaintiff began experiencing excruciating pain in his nose, and this time noticed discoloration on the right side of his face and nose. [11 at ¶ 53.] Plaintiff went to the division nurse who immediately scheduled him to see a Physician's Assistant. [*Id.* at ¶ 54.] Shortly thereafter, the Physician's Assistant conducted an examination of his nose and face area and noticed dry blood and an infection setting into Plaintiff's nose. [*Id.* at ¶ 55.] The Physician's Assistant prescribed Plaintiff with antibiotics (which were ultimately unhelpful) and scheduled him for an MRI. [*Id.* at ¶ 56.]

On September 2, 2020, Plaintiff went to Cermak Hospital and was informed that he had suffered a broken nose and deviated septum from the COVID test he had been forced to take in April. [11 at ¶ 57.] Plaintiff was then scheduled to see a throat and nose specialist at Stroger Hospital on October 14, 2020. [*Id.* at ¶ 58.] The specialist conducted an examination and concluded that Plaintiff would have to undergo surgery to realign his septum and remove any stray bone or cartilage that had been untethered in his nostril from the COVID test swab. [*Id.* at ¶ 59.] As of June 8, 2021, Plaintiff had not yet undergone the surgery. [*Id.* at ¶ 60.]

With the assistance of counsel recruited by the Court, Plaintiff brings this five-count action pursuant to 42 U.S.C. § 1983. [See 11.] Counts I and II claim constitutional deprivation pursuant to 42 U.S.C. § 1983, Counts III and IV claim "medical malpractice" and seek "damages under 42 U.S.C. § 1983," and Count V is a "claim under 745 ILCS 10/9102 against the County of Cook." [11 at 10-12.] As discussed in more detail below, Sheriff Dart and Superintendent Yoksoulian jointly move to dismiss the claims against them pursuant to Federal Rule of Civil Procedure 12(b)(6). [47.]

## II. Legal Standard

To survive a Rule 12(b)(6) motion to dismiss for failure to state a claim upon which relief can be granted, the complaint first must comply with Rule 8(a) by providing "a short and plain statement of the claim showing that the pleader is entitled to relief," Fed. R. Civ. P. 8(a)(2), such that the defendant is given "fair notice of what the * * * claim is and the grounds upon which it rests." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007) (quoting *Conley v. Gibson*, 355 U.S. 41, 47 (1957)) (alteration in original). Second, the factual allegations in the complaint must be sufficient to raise the possibility of relief above the "speculative level." *E.E.O.C. v. Concentra Health Servs., Inc.*, 496 F.3d 773, 776 (7th Cir. 2007) (quoting *Twombly*, 550 U.S. at 555). "A pleading that offers 'labels and conclusions' or a 'formulaic recitation of the elements of a cause of action will not do.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Twombly*, 550 U.S. at 555).

Dismissal for failure to state a claim under Rule 12(b)(6) is proper "when the allegations in a complaint, however true, could not raise a claim of entitlement to relief." *Twombly*, 550 U.S. at 558. In reviewing a motion to dismiss pursuant to Rule 12(b)(6), the Court accepts as true all of Plaintiffs' well-pleaded factual allegations and draws all reasonable inferences in Plaintiffs' favor. *Killingsworth v. HSBC Bank Nevada, N.A.*, 507 F.3d 614, 618 (7th Cir. 2007). However, "[t]o survive a motion to dismiss, the well-pleaded facts of the complaint must allow the court to infer more than the mere possibility of misconduct." *Langworthy v. Honeywell Life & Acc. Ins. Plan*, 2009 WL 3464131, at *2 (N.D. Ill. Oct. 22, 2009) (citing McCauley v. City of Chicago, 671 F.3d 611, 616 (7th Cir. 2011)). Additionally, the Court "need not accept as true legal conclusions, or threadbare recitals of the elements of a cause of action, supported by mere conclusory statements." *Brooks v. Ross*, 578 F.3d 574, 581 (7th Cir. 2009) (quoting *Iqbal*, 556 U.S. at 678).

Evaluating whether a "claim is sufficiently plausible to survive a motion to dismiss is 'a context-specific task that requires the reviewing court to draw on its judicial experience and common sense.'" *Id*. (quoting *McCauley*, 671 F.3d at 616).

### III. Analysis

As an initial matter, the Court must attempt to decipher Defendants' motion to dismiss. The motion to dismiss is titled "Defendant's [sic] Sheriff Thomas Dart and Superintendent Yoksoulian's Motion to Dismiss Plaintiff's First Amended Complaint Pursuant to F.R.C.P. 20 and F.R.C.P. 12(b)(6)." This heading suggests that the ensuing discussion will present to the Court reasons that it should dismiss the claims against Dart and Yoksoulian. That would make sense—they believe that Sheriff Dart is an improper defendant, and they seek dismissal of Count II, which Plaintiff asserts against Yoksoulian. Instead, Defendants never actually argue that the Court should dismiss the claim against Yoksoulian. In fact, Yoksoulian's name is not mentioned beyond the first page of the opening brief. This leaves the Court with the impression that the only defendant seeking dismissal is Sheriff Dart. Further solidifying that understanding, the last sentence of the analysis section states: "Therefore, the Court should dismiss the Complaint against Defendant Sheriff Thomas Dart with prejudice." [47 at 7.] There is no mention of Yoksoulian or any other defendant.

The reply brief only further muddies the waters. Apparently, several additional defendants have jointly submitted the reply brief despite taking no part in submitting the motion's opening brief. The reply claims to have been submitted not only by Dart and Yoksoulian, but also by "Cook County, Wakas Ahmad,[3] Glen Trammell, Gary Sheehan, Kingston Olikagu, and Donald

---

[3] It is not clear from the pleadings or the briefing on this motion if this Defendant's name is Wakas Ahmad or Ahmad Wakas.

MacLellan." [56 at 1.] These defendants collectively are referred to as the "Cook County Defendants." [*Id.*]

The Court treats this motion as having been brought by only Sheriff Dart and Superintendent Yoksoulian, because "it is well-established that arguments raised for the first time in the reply brief are waived." *Mendez v. Perla Dental*, 646 F.3d 420, 423-24 (7th Cir. 2011); see also *Ruiz v. Williams*, 144 F.Supp.3d 1007, 1010-11 (N.D. Ill. 2015) (group of defendants lacked standing to seek dismissal of claims against non-moving defendant). But whether some or all of the Cook County Defendants seek dismissal ultimately is immaterial, because the Court grants Defendants' motion only as it relates to Dart and denies the motion for all other Cook County Employees named in the complaint.

### A. Sheriff Dart

Plaintiff claims to bring this action against Sheriff Dart in his official capacity because "[h]e is the final policymaker responsible for all policies and practices of the Cook County Department of Corrections." [11 at ¶ 10.] However, and as noted above, Plaintiff does not assert any of his claims against Sheriff Dart. Rightly so, because the complaint does not allege any facts involving Sheriff Dart. "Where a complaint alleges no specific act or conduct on the part of the defendant and the complaint is silent as to the defendant except for his name appearing in the caption, the complaint is properly dismissed." *Potter v. Clark*, 497 F.2d 1206, 1207 (7th Cir. 1974).

Furthermore, Plaintiff states that Dart was "responsible for all policies and practices of the Cook County Department of Corrections" [11 at ¶ 10], but that is not enough, because "a plaintiff must allege that he or she suffered injuries of a constitutional magnitude as a result of an official policy, custom, or practice." *Lewis v. Cook Cnty. Dept. of Corrections*, 28 F.Supp.2d 1073, 1080

8

(N.D. Ill. 1998) (citing *Monell v. Dept. of Social Servs.*, 436 U.S. 658 (1978)). Plaintiff fails to allege that he was injured *as a result of* the policies in practices for which Dart is responsible. All claims against Sheriff Dart (to the extent they exist) thus are dismissed. But despite Defendants' request otherwise, "[t]he Court sees no reason to depart from the Seventh Circuit's general rule that when granting a motion to dismiss under Rule 12(b)(6), the Court should do so without prejudice." *Perez v. City of Chicago*, 2016 WL 4493425, at *3 (N.D. Ill. Aug. 26, 2016). Thus, if counsel identify a basis for amending the complaint at a later stage to state a claim against Sheriff Dart, they may seek leave to do so.

  **B.**  **Joinder**

Defendants also argue that "Plaintiff's claims should be dismissed for being improperly joined and if not, then severed into separate cases, along with the necessary filing fees." The Court disagrees.

Under Federal Rule of Civil Procedure 18(a), "[a] party asserting a claim, counterclaim, crossclaim, or third-party claim may join, as independent or alternative claims, as many claims as it has against an opposing party." Fed. R. Civ. P. 18(a). Rule 20(a)(2) allows defendants to be joined if: "(A) any right to relief is asserted against them jointly, severally, or in the alternative with respect to or arising out of the same transaction, occurrence, or series of transactions or occurrences; and (B) any question of law or fact common to all defendants will arise in the action." Fed. R. Civ. P. 20(a)(2). Lastly, Rule 21 instructs that "[m]isjoinder of parties is not a ground for dismissing an action." Fed. R. Civ. P. 21. Instead, "[o]n motion or on its own, the court may at any time, on just terms, add or drop a party. The court may also sever any claim against a party." *Id.*

9

Consistent with the rest of Defendants' briefing on this motion, it is not clear exactly what Defendants are asking of the Court. Plaintiff asserts four claims against at least fourteen defendants. Which claims and/or parties do Defendants claim are improperly joined? In their reply brief, Defendants divide Plaintiff's allegations into three different events: (i) COVID test administration at Cermak Hospital; (ii) tear-gas spraying in the COVID recovery ward; and (iii) subsequent inadequate treatment for injuries allegedly caused by the April 2020 COVID test. According to the Defendants, "[n]one of these three incidents have any common thread tying them together" and the incidents "involve vastly different sets of facts and two very distinct groups of defendants: Sheriff personnel Defendants and Cook County medical Defendants." [56 at 4.] Presumably, because "[t]he second incident, involving the OC spray and Defendant Superintendent Yoksoulian, is perhaps the most clearly distinct," Defendants believe that the "Sheriff personnel Defendants"—seemingly Defendants Cook County, Superintendent Yoksoulian, and four unknown correctional officers—are improperly joined, and thus seek to sever Count II. In any event, the precise nature of Defendants' motion unimportant here, because the Court declines to sever any of Plaintiff's claims at this stage.

Defendants cite *George v. Smith*, 507 F.3d 605 (7th Cir. 2007), in support of their argument that Plaintiff's complaint violates Rules 18 and 20. In *George*, the Seventh Circuit agreed with the district court's determination that it was improper for a plaintiff to assert 50 distinct claims against 24 defendants in one lawsuit in order to circumvent the limits the Prison Litigation Reform Act imposes on the number of frivolous suits that may be brought without prepaying the filing fee. The Court explained that "Claim A against Defendant 1 should not be joined with unrelated Claim B against Defendant 2." 507 F.3d at 607. Defendants cite this statement multiple times in their

10

briefs, but the key is that "*unrelated* claims against different defendants belong in different suits." *Id.* (emphasis added).[4]

The Court does not have enough information at this early stage of the case to conclude that any particular claims and/or defendants are improperly joined. In its current form, the complaint asserts five claims, all of which (Plaintiff insists) have their genesis in the COVID test that he was forced to take against his will. In particular, and drawing all reasonable inferences in Plaintiff's favor as the Court must at this stage, see *Killingsworth*, 507 F.3d at 618, it is plausible that the tear gas incident relates to the COVID testing events (and therefore to Plaintiff's other claims) because, for example, maybe Plaintiff would not have been in the COVID recovery ward if he had not been forced to undergo testing as he alleges in the complaint. See *Ruiz v. Williams*, 144 F.Supp.3d 1007, 1018 (N.D. Ill. 2015) ("Plaintiff's claims against all of the Defendants share a common thread: Plaintiff's February 2010 'gastric eruption' and his attempts to obtain a medical diagnosis and treatment for his IBS.") Or perhaps Plaintiff's asthma attack only occurred because of the difficulty he experienced breathing out of his nostril after being forced to take the diagnostic COVID test. See, *e.g.*, *Bederson v. United States*, 756 F.Supp.2d 38, 54 (D.D.C. 2010) (defendants properly joined in medical malpractice action because plaintiff "alleges that the confluence of, *inter alia*, the Federal Defendants' failure to timely notify [plaintiff] of his blood test results and [private practitioner]'s failure to instruct [plaintiff] to cease taking his blood thinner medication sufficiently in advance of his esophagogastroduodenoscopy" caused plaintiff to suffer internal bleeding).

Should fact discovery reveal that drawing such inferences are not warranted, the Court can reconsider whether severing one or more claims and/or defendants would be appropriate. See Fed.

---

[4] Any suggestion that Plaintiff has joined claims to avoid the strictures of the PLRA is misplaced, as Plaintiff originally filed two separate actions.

R. Civ. P. 21 ("On motion or on its own the court may *at any time*, on just terms, add or drop a party" (emphasis added)). But based on the face of the complaint, and at this early stage of the case, the Court does not find it necessary to sever Plaintiff's claims. There is no harm in starting discovery in the current posture, as even if certain claims or defendants ultimately are severed and potentially funneled into separate lawsuits for summary judgment and/or trial.

### IV. Conclusion

For the reasons above, Defendants' motion [47] is granted in part and denied in part. Defendant Dart's motion to be dismissed from the action is granted, and all other requests for relief are denied at this stage of the case.

Dated: August 8, 2022

Robert M. Dow, Jr.
United States District Judge